IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 AUG 31 PM 2:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

FEDERAL RESERVE BANK )
OF ATLANTA, )
  )
    Plaintiff, )
  )
vs. ) CV99-S-1743-S
  )
ROBERT R. THOMAS, )
  )
    Defendant. )

ENTERED
AUG 31 1999

## MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons discussed below, the motion is due to be granted.

### I. PROCEDURAL BACKGROUND

Plaintiff commenced this declaratory judgment action on July 7, 1999.[1] From the petition's sparse language, it appears defendant, who was an employee of plaintiff, suffered an injury during September of 1997. (Petition ¶ 2.)[2] Plaintiff seeks "a judicial determination of its rights and obligations pursuant to the Alabama Workers' Compensation Act ...." (*Id.* ¶ 7.) Specifically, plaintiff wants to know "whether [defendant's]

---

[1] (Petition for Determination of Disputed Claim of Worker's Compensation Benefits) ("Petition").

[2] Plaintiff claims it "has paid temporary total disability benefits and certain medical expenses on behalf of [defendant]." (*Id.* ¶ 4.)

condition arose out of and in the course of his employment with the [plaintiff], whether [defendant] is permanently disabled[,] and if any benefits pursuant to the Alabama Workers' Compensation Act are due and owing." (*Id.* ¶ 6.)

Plaintiff contends this court has both federal question and diversity jurisdiction. (*Id.* ¶ 1.)[3] The federal question basis rests on 12 U.S.C. § 632, which provides in relevant part (second paragraph):

> <u>Notwithstanding any other provision of law</u>, <u>all suits of a civil nature at common law or in equity</u> to which any Federal Reserve Bank shall be a party shall be deemed to arise under the laws of the United States, and the <u>district courts of the United States shall have original jurisdiction of all such suits</u> .... [Emphasis supplied.]

Defendant disputes these jurisdictional grounds and asserts "proper jurisdiction and administration of this matter would be in the Circuit Court of Jefferson County, Alabama." (Motion to Dismiss ¶ 3.) Plaintiff notes defendant filed a worker's compensation claim in the Jefferson County Circuit Court one day after initiation of this action. (Brief in Reply to Motion to Dismiss at 1.)

---

[3] The court assumes plaintiff is a Georgia resident. Plaintiff contends defendant resides in Alabama. (*Id.*)

2

## II. DISCUSSION

### A. Federal Question Jurisdiction under 12 U.S.C. § 632

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996). When enacting section 632:

> Congress ... made it plain ... that a federal reserve bank is to have unrestricted access to the district courts .... [This section] was written in the broadest possible language .... It was doubtless the intention of Congress to grant full right of recourse to the federal courts to these institutions, which had become important agencies of the federal government in its control of banking and currency.

*City and County of San Francisco v. Assessment Appeals Board for the City and County of San Francisco*, 122 F.3d 1274, 1276 (9th Cir. 1997) (quoting *Federal Reserve Bank of Boston v. Commissioner*, 499 F.2d 60, 63 (1st Cir. 1974) (internal quotations omitted)).[4] In *Federal Reserve Bank of Boston*, the First Circuit endorsed a district court's conclusion that section 632 "reflects a congressional policy to have any litigation affecting the Federal Reserve System centered in a federal forum to promote uniformity of decision." *Federal Reserve Bank of Boston*, 499 F.2d at 63 (citing

---

[4] Despite approval of this broad language, the court in *City and County of San Francisco* concluded that "a federal reserve bank has an unfettered right under section 632 to <u>defend</u> in federal court ...." 122 F.3d at 1278 (emphasis supplied).

3

*Bickford's, Inc. v. Federal Reserve Bank*, 6 F. Supp. 928, 930 (S.D.N.Y. 1934)).

Section 632 focuses on "suits of a civil nature at common law or in equity." However, the workers' compensation laws of the State of Alabama are, like those of virtually every other state in the United States, purely creatures of <u>statute</u>. *See Freeman v. Blue Mountain Industries*, 395 So. 2d 1049, 1051 (Ala. Civ. App. 1981) ("The workmen's compensation statutes create rights, remedies, and procedures all their own."); *Ford v. Mitcham*, 298 So. 2d 34, 36 (Ala. Civ. App. 1974) (workers' compensation acts provide substitute for common law tort actions for personal injuries between master and servant). *See generally* W. Page Keeton et al., *Prosser and Keeton on Torts* 572 (5th ed. 1984) ("Some slow progress toward the imposition of liability upon the employer may be traced through the common law cases, but the tendency in this direction was in large part superseded by the passage of the workers' compensation acts.") Recovery under such statutes is based neither on common law nor principles of equity. *See Slagle v. Reynolds Metals Company*, 344 So. 2d 1216, 1217 (Ala. 1977); *Gilmore v. Rust Engineering Company*, 235 So. 2d 673, 674 (Ala. Civ. App. 1970); Page & Keeton, *supra*, at 573-74 (describing workers' compensation

4

schemes as "a form of [statutory] strict liability").

Based on a literal reading of the statute, this court concludes section 632 does not reach plaintiff's declaratory judgment action based on the Alabama Workers' Compensation Act, because this civil suit does not arise from common law or equity. *See Beck v. Lazard Freres & Company, L.L.C.*, 175 F.3d 913, 914 (11th Cir. 1999) (applying statutory construction principle *expressio unius est exclusio alterius*, which means that the mention of one thing (here, civil actions at common law or in equity) implies the exclusion of another (here, civil actions based purely on state statute)); *United States v. Ortega-Torres*, 174 F.3d 1199, 1200 (11th Cir. 1999) (noting plain meaning of statute controls, in absence of ambiguity). But even if that conclusion is incorrect as a matter of law, this court also believes that it is wise to abstain, "pending litigation of the state issue in the state court." *Federal Reserve Bank of Boston*, 499 F.2d at 64.

**B.   The *Great Lakes* Doctrine: Comity and Federalism**

Moreover, federal courts have refused to exercise jurisdiction where a pure question of state law drives the case and an adequate remedy exists in state court. The United States Supreme Court has recognized justification for refusing jurisdiction rests on

5

principles of "comity, equality and federalism." *Federal Reserve Bank of Boston*, 499 F.2d at 61 (citing *Matthews* and *Great Lakes*, discussed below).

In two cases, the Supreme Court denied federal declaratory relief against a state tax law where taxpayers had adequate recourse to state courts for determination of their claims. In *Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 214, 76 L.Ed. 447 (1932), the Court noted:

> If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved.

*Id.* at 526, 52 S.Ct. at 219-20. The Court expanded on this point in *Great Lakes v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943):

> This Court has recognized that the federal courts, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, will not ordinarily restrain state officers from collecting state taxes where state law affords an adequate remedy to the taxpayer.

*Id.* at 297, 63 S.Ct. at 1072.

In *United States v. State Tax Commission*, 481 F.2d 963, 973 (1st Cir. 1973), the First Circuit explained the rationale of *Matthews* and *Great Lakes*: Limiting declaratory actions in federal

6

court with respect to state taxes is proper "since the availability of broad [federal] declaratory or injunctive relief ... would promote forum shopping, inconsistent interpretation of state laws, and confusion as to the effect of such judgment on taxes already collected." With respect to section 632, the district court in *Federal Reserve Bank of Boston* recognized the continued vitality of the *Great Lakes* doctrine and sought to apply it to a declaratory judgment action filed by a federal reserve bank.[5]

In this case, both plaintiff and defendant allude to section 25-5-81 of the Code of Alabama, which provides in part:

> In case of a dispute between employer and employee ... with respect to the right to compensation ... or the amount thereof, either party may submit the controversy to the circuit court of the county which would have jurisdiction of a civil action in tort between the parties.

The issues presented in this case focus solely on state law,[6] and

---

[5] In *Federal Reserve Bank of Boston*, the bank contested application of a state sales tax to its purchase of materials and supplies to be used in construction of the bank building. The district court concluded dismissal of the suit was proper "[s]ince the plaintiff clearly could adequately seek declaratory relief" under Massachusetts statutory law. 368 F. Supp. 94, 97 (D. Mass. 1973). It noted that "[w]hile the underpinnings of the *Great Lakes* doctrine may be somewhat amorphous and shifting, the continuing validity of that doctrine is not open to question." *Id.* at 95. Although the First Circuit reversed the district court, it did so on grounds unrelated to this point. *See* 499 F.2d at 62-64 (concluding that (1) federal reserve banks should be treated differently than federal savings and loan associations and (2) issues in this case were primarily federal, not state, in nature).

[6] *See* Subra v. CMS Therapies, Inc., 900 F. Supp. 407, 410 (M.D. Ala. 1995) (actions under worker's compensation statute do not implicate any federal issues).

7

the Alabama legislature has provided a mechanism to determine those issues in section 25-5-81.[7] Unlike *Federal Reserve Bank of Boston*, where federal issues predominated,[8] plaintiff admits this action rests entirely on its potential liability under state law. (Petition ¶¶ 3, 7.) Therefore, even if plaintiff somehow established federal question jurisdiction under section 632 in spite of its express language, this court abstains from the exercise of such jurisdiction, in consideration of comity and federalism.

C.  **Diversity Jurisdiction under 28 U.S.C. § 1332**

Plaintiff also invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[9] In a declaratory judgment action, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Braniff International, Inc. v. Florida Public Service Commission*, 576 F.2d 1100, 1106 (5th Cir.

---

[7] *See* Collins v. Central Foundry Company, 263 F.2d 712, 713 (5th Cir. 1959) (this section provides "very simple civil action for the determination of controversies or disputes with respect to the right to compensation"); Baggett v. Webb, 248 So. 2d 275, 280 (Ala. Civ. App. 1971) (worker's compensation cases must be brought in circuit court, regardless of amount sought).

[8] "The fundamental issue is whether the state has reached beyond its powers under the Supremacy Clause and under the federal statute exempting federal reserve banks from tax." *Federal Reserve Bank of Boston*, 499 F.2d at 64 (noting state statute is "inextricably interwoven with federal issues").

[9] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between citizens of different States." The court assumes plaintiff and defendant are citizens of different states.

8

1978).[10] Therefore, plaintiff must allege its potential liability under the Alabama Workers' Compensation Act exceeds $75,000. Plaintiff fails to state any amount in controversy in its petition.[11]

Section 25-5-57 of the Act sets forth a detailed compensation schedule for successful worker's compensation claimants. It differentiates between claims of "temporary total disability," "temporary partial disability," "permanent partial disability," "permanent total disability," "death following disability," and "hernia." *See* Ala. Code § 25-5-57(a)(1)-(6). In its petition, plaintiff inquires only whether defendant "is permanently disabled and if any benefits ... are due and owing." (Petition ¶ 6.) The amount of compensation due defendant depends on whether he suffers from a "permanent partial disability" or "permanent total disability." If the permanent disability is partial, the duration of compensation depends on the body part injured. *See* Ala. Code § 25-5-57(a)(3)(a)(1)-(34) (compensation shall be 66 2/3% percent of

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[11] The only point remotely relevant to an alleged amount in controversy can be found in paragraph 5 of the Petition: "At the time of the alleged injury made the basis of this suit, respondent's average weekly wage was approximately $413.36."

9

average weekly earnings for a set period of weeks).[12] The same logic applies to any claim by defendant of a "permanent total disability" under the Act.[13] Under either section, the facts behind the claim determine whether the amount recoverable exceeds $75,000.

In *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1357 (11th Cir. 1996), the Eleventh Circuit held that the proper amount in controversy must be proven by a preponderance of the evidence when no amount is initially stated. Based on all pleadings, it must be more likely true than not true that plaintiff's claim exceeds $75,000. *See id*. *Tapscott*, however, dealt with the burden of proof for a party contesting the removal of an action originally filed in a state court to a federal forum.

The same logic applies, by analogy, to an action filed

---

[12] For example, if plaintiff claims defendant lost both an arm and a foot, defendant may be entitled to approximately $110,284.45. *See id*. at (a)(32) (weekly wage at time of injury of $413.36 multiplied by 66 2/3%, multiplied by 400 weeks). On the other hand, if plaintiff claims defendant lost one foot, defendant may be entitled to approximately $38,323.85. *See id*. at (a)(14) (weekly wage at time of injury of $413.36 multiplied by 66 2/3%, multiplied by 139 weeks). *See generally* Johnson v. Cullman Medical Center, 615 So. 2d 621 (Ala. Civ. App. 1992) (reduction in earning capacity entitles employee to collect for permanent partial disability).

[13] An employee receives 66 2/3% of their average weekly earnings for a "permanent total disability," which is defined as:
> The total and permanent loss of the sight of both eyes or the loss of both arms at the shoulder or any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.

Ala. Code § 25-5-57 (a)(4)(d). *See generally* W.W. Dyar & Sons v. Cochran, 693 So. 2d 527 (Ala. Civ. App. 1997) (finding by court of permanent total disability creates presumption of lost earning capacity).

10

originally in a federal forum based on diversity. The district court has a duty to investigate the sufficiency of the amount in controversy, for purposes of subject matter jurisdiction. *See Unrein v. Citgo Petroleum Corporation*, 1997 WL 18181, at *2 (D. Kan. Jan. 10, 1997) ("When a determination cannot be made from the complaint, the <u>court</u> may look to the notice of removal or to affidavits submitted by the parties, <u>or it may independently assess the monetary value of the claim</u>.") (emphasis supplied) (citing *Kilpatrick v. Martin K. Eby Construction Company, Inc.*, 708 F. Supp. 1241, 1243 (N.D. Ala. 1989)).

Based on the party submissions, this court cannot conclude it is more likely true than not true the amount in controversy exceeds $75,000. Plaintiff supplied no affidavits or supplemental pleading to its petition to elaborate on what exactly is at stake in this declaratory judgment action. Nor did plaintiff reference the amount requested by defendant in his parallel state court proceeding. Plaintiff's complete failure to specify or describe the type of injury suffered by defendant renders it impossible for this court to determine whether its petition satisfies the requisite amount in controversy of $75,000. Because plaintiff has not alleged the requisite amount in controversy or provided any

11

basis for this court to determine the amount, this court lacks diversity jurisdiction.

**D. Trial Court Discretion under the Declaratory Judgment Act**

Even if plaintiff establishes diversity jurisdiction by alleging an amount in controversy greater than $75,000, this court has broad discretion under the Declaratory Judgment Act to refuse to hear plaintiff's petition. The Act, which is procedural instead of jurisdictional, provides:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis supplied); see *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937).[14] The United States Supreme Court's most recent (and relevant, for purposes of this case) discussion of the Act occurred in *Wilton v. Seven Falls Company*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

The Court in *Wilton* resolved a circuit split on whether the discretionary standard of *Brillhart v. Excess Insurance Company of*

---

[14] Plaintiff recognized the applicability of the Declaratory Judgment Act in its reply brief. (Brief in Reply to Motion to Dismiss at 4-5.)

12

*America, Inc.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), or the "exceptional circumstances" test articulated in later Supreme Court cases[15] "governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings ...." *Wilton*, 515 U.S. at 279, 115 S.Ct. at 2139. The Court reaffirmed *Brillhart*, which held the decision to declare rights under the Act is within the sound discretion of the trial court.[16] In *Brillhart*, the Court stated:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495, 62 S.Ct. at 1175-76. In holding the *Brillhart* discretion standard still applied and appellate courts should review district court decisions under an abuse of discretion standard,[17] the Court noted in *Wilton*:

---

[15] The "exceptional circumstances" test developed primarily from two Supreme Court cases. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hospital v. Mercury Construction Company*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This test mandates that district courts only stay or dismiss actions properly within their jurisdiction upon a showing of "exceptional circumstances" that create a compelling reason to stay or dismiss. *See Wilton*, 515 U.S. at 281-83, 115 S.Ct. at 2140-41 (collecting cases).

[16] The trial court is "under no compulsion to exercise that jurisdiction." *Brillhart*, 316 U.S. at 494, 62 S.Ct. at 1175.

[17] The second issue in *Wilton* concerned whether appellate courts should

13

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. ... We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.

515 U.S. at 288-89, 115 S.Ct. at 2143-44.

In construing *Wilton*, district courts have focused on "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Wilton*, 515 U.S. at 281-82, 115 S.Ct. at 2140-41 (cited in *Mutual Life Insurance Company of New York v. Adams*, 972 F. Supp. 1386, 1389 (N.D. Ala. 1997) (Guin, J.) (noting requests for declaratory judgment founded upon diversity jurisdiction afford trial courts "wide discretion whether or not to entertain such actions")). A few circuit courts have listed factors district courts should analyze in deciding whether to stay or dismiss. *See United Insurance Company of America v. Harris*, 939 F. Supp. 1527,

---

review district court decisions to stay or dismiss under the Act for (1) abuse of discretion or (2) *de novo*. *Wilton*, 515 U.S. at 281-82; 115 S.Ct. at 2140.

14

1533 (M.D. Ala. 1996) (Thompson, C.J.) (summarizing factors employed by Fifth, Sixth, and Tenth Circuits).[18]

Since the Eleventh Circuit has not created its own list of factors, this court applies those factors relevant to this action articulated by other circuits. Specifically, this court finds dismissal of plaintiff's petition would be warranted under the Act, because the pending state court action filed by defendant provides an ample independent forum. Ruling on plaintiff's petition encroaches upon the Alabama legislature's declaration that all

---

[18] The Sixth and Tenth Circuits focus on the following factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.
*Harris*, 939 F. Supp. at 1533 (*quoting* Allstate Insurance Company v. Green, 825 F.2d 1061, 1063 (6th Cir. 1987); State Farm Fire and Casualty Company v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)).
   The Fifth Circuit looks at the following:
   (1) whether there is a pending state court action in which all of the matters in controversy may be fully litigated; (2) whether plaintiff filed lawsuit in anticipation of lawsuit filed by defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether there are possible inequities in allowing the declaratory plaintiff to change forums; (5) whether federal court is a convenient forum for the parties and witnesses; and (6) whether retaining the lawsuit in federal court would be in the interest of judicial economy.
*Harris*, 939 F. Supp. at 1533 (*citing* Travelers Insurance Company v. Farm Bureau Federation, Inc., 996 F.2d 774, 778 (5th Cir. 1993)). In a case following *Travelers Insurance Company*, the Fifth Circuit noted a district court abuses discretion if it fails to balance the purposes of the Act with the relevant factors. It must justify its reasons for refusing to hear the declaratory judgment action. *See* St. Paul Insurance Company v. Trejo, 39 F.3d 585, 590 (5th Cir. 1994).

15

contested workers' compensation claims be heard in "the circuit court of the county which would have jurisdiction of a civil action in tort between the parties." Ala. Code § 25-5-81. Further, it is clear plaintiff filed this action in anticipation of defendant filing his worker's compensation claim in Alabama state court.[19]

Finally, it is in the interest of judicial economy and resources to dismiss this petition and have these parties adjudicate any worker's compensation claim in state court. No federal issues are at stake and the Alabama legislature has provided adequate procedures and remedies for plaintiff to contest any claim made by defendant. As stated in *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175-76, it would be "uneconomical and vexatious" for this court to entertain this petition.

### III. CONCLUSION

For all of the foregoing reasons, this court concludes that plaintiff's petition is due to be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1). An appropriate order consistent with this memorandum opinion will be

---

[19] Plaintiff has moved to dismiss defendant's state action under Ala. Code § 6-5-440, which bars prosecution of two actions for the same cause and against the same party. The court forms no judgment as to this motion. The court does note, however, that plaintiff argues this court should not dismiss the present action since it "filed its petition first" and defendant "is already a plaintiff in an identical action against the same party in a court of this state ...." (Brief in Reply to Motion to Dismiss at 2-3.)

16

entered contemporaneously herewith.

DONE this the 31st day of August, 1999.

_____
United States District Judge

17